UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

UNITED STATES OF AMERICA                :

   -v.-                                :       14 Cr. 108 (KPF)

ANTHONY DIAZ,                           :

      Defendant.                     :

---------------------------------------------------------------x

## GOVERNMENT'S SENTENCING MEMORANDUM

PREET BHARARA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Christopher J. DiMase
Assistant United States Attorney
- Of Counsel -



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 26, 2014

**BY ECF**

The Honorable Katherine Polk Failla
United States District Judge
United States Courthouse
40 Foley Square
New York, New York  10007

>     Re:    *United States v. Anthony Diaz*
>            14 Cr. 108 (KPF)

Dear Judge Failla:

      The Government respectfully submits this memorandum in advance of the sentencing of Anthony Diaz, scheduled for Wednesday, December 3, 2014, at 3:00 p.m.  Based on the offense conduct described in the Presentence Report ("PSR") and the arguments set forth below, the Government believes that a sentence within the Guidelines range of 121 to 151 months is appropriate in this case.[1]  The Government submits that a sentence within that range is necessary to satisfy at least two of the statutory sentencing objectives: (1) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, 18 U.S.C. § 3553(a)(2)(A); and (2) the need to afford adequate deterrence to criminal conduct, *id.* § 3553(a)(2)(B).

      The defendant was a large scale narcotics supplier, who imported kilogram quantities of cocaine from Puerto Rico and other locations outside of the continental United States, and supplied that cocaine to his American customers.  He distributed in excess of 100 kilograms of cocaine as part of his role in the instant offense.  (PSR ¶¶ 21-22).  Moreover, his April 2002 money laundering arrest demonstrates that he has been a long time player in the world of international drug trafficking.  In connection with that arrest, agents seized $2,000,000 in Colombian bulk cash narcotics proceeds from suitcases possessed by Diaz.  (PSR ¶ 44).  Agents also recovered from Diaz's apartment a money counter, a bottle of invisible ink, 10 empty duffle bags, eight pagers, ledgers relating to narcotics money laundering activity, and an RF detector (used to detect hidden recording devices sometime worn by undercover agents).  (PSR ¶ 44).  These are the tools of a high level narcotics trafficker.

---

[1] Based on the Guidelines Manual in effect at the time the parties entered into the August 7, 2014 plea agreement, the parties stipulated to a Guidelines range of 151 to 188 months' imprisonment.  However, under the recently issued November 1, 2014 version of the Guidelines Manual, the Government agrees with the defendant that the properly calculated Guidelines range is 121 to 151 months' imprisonment.  In the PSR, the Probation Office also calculates that Guidelines range, and recommends a sentence of 121 months' imprisonment.  (PSR at 19).  In his sentencing memorandum, the defendant requests that the Court impose the mandatory minimum sentence of 120 months.

The defendant's conduct as part of the instant offense demonstrates that he continues to operate as a major trafficker.  In addition to his distribution of large quantities of cocaine, in June 2013, New Jersey State Police officers stopped Diaz as he was driving, and recovered $10,000 in cash from a hidden compartment (commonly known as a "trap") in the trunk of his vehicle.  The packaging of the money was consistent with that of narcotics proceeds.  Officers also recovered a number of cellular telephones and beepers from the Diaz pursuant to his arrest.[2]

The idea that Diaz engages in this sort of high level drug trafficking due to his abuse of marijuana, as the defendant suggests, is frankly preposterous.  This is not a case of a street level dealer who sells small quantities of drugs to feed his habit, or gets "high on his own supply."  The defendant is not in the drug business to support a marijuana addiction, he is in the drug business for profit.  There can be no other plausible explanation for Diaz's involvement in the regular distribution of large multi-kilogram loads of cocaine and the collection of literally millions of dollars in illegal proceeds.  His participation in the Bureau of Prison's RDAP program in the past appears to have been nothing more than a ploy to get out of jail sooner, in order to return to his illegal business.

Importantly, the defendant's previous federal sentence – seven years' imprisonment on his money laundering conviction – had no discernable impact on his behavior.  As soon as Diaz was finished with his federal supervised release at the end of 2010, he went right back to narcotics trafficking.  A significant sentence of imprisonment is necessary both to deter Diaz from committing further crimes, and to send a strong signal to others that such repeated violations of the federal narcotics laws will not be tolerated.

The defendant's crimes are not victimless.  Cocaine ruins lives, it tears apart families, and it devastates communities.  Large scale traffickers like Diaz provide the critical link between street dealers in the United States and suppliers abroad, and enable the steady and significant flow of illegal drugs into this country.  Having not learned to avoid further involvement in illegal narcotics distribution after a seven year federal sentence, the defendant finds himself again before this Court.  Under these circumstances, the Government submits that the Court should impose a substantially longer sentence, such as one in the Guidelines range of 121 to 151 months, to reflect the seriousness of the defendant's offense, and to afford both specific and general deterrence to such conduct in the future.

    Respectfully submitted,

    PREET BHARARA
    United States Attorney

By:   */s/ Christopher J. DiMase*
    Christopher J. DiMase
    Assistant United States Attorney
    Southern District of New York

cc:    Jesse Siegel, Esq. (by ECF)

---

[2]  This arrest is referenced in paragraphs 49-50 of the PSR.