UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

+------------------------------------------+
| UNITED STATES OF AMERICA                 |
|                                          |
|                    -v.-                  |
|                                          |
| ANTHONY DIAZ,                            |
|                                          |
|                         Defendant.       |
+------------------------------------------+

14 Cr. 108 (KPF)

**ORDER**

KATHERINE POLK FAILLA, District Judge:

Defendant Anthony Diaz, who is currently housed at a halfway house administered by the Residential Reentry Management Field Office in Brooklyn, New York ("RRM New York"), has applied for compassionate release, in the form of immediate release from Bureau of Prisons ("BOP") custody, pursuant to 18 U.S.C. § 3582(c)(1)(A).  In support, Mr. Diaz cites certain medical issues that arose while he was incarcerated, the conditions of his confinement during the ongoing COVID-19 pandemic, his age, and rehabilitative steps that he has taken in prison.  The Government opposes this motion.  As set forth in the remainder of this Order, the Court denies Mr. Diaz's motion for compassionate release.

## BACKGROUND

On February 18, 2014, Mr. Diaz was charged in a sealed indictment with conspiracy to distribute and to possess with the intent to distribute cocaine, in violation of 21 U.S.C. § 846.  (Dkt. #1).  According to Mr. Diaz's Presentence Investigation Report ("PSR"), the charges arose from a Drug Enforcement Administration ("DEA") investigation into large-scale importation of cocaine from Puerto Rico and other locations into the continental United States.  (PSR

¶¶ 8-24).  Mr. Diaz was ultimately held responsible for the distribution of between 50 and 150 kilograms of cocaine between 2011 and 2013.  (*Id.* at ¶¶ 23, 29).

Significantly, however, the instant case was not Mr. Diaz's first federal prosecution.  Back in April 2002, Mr. Diaz had been arrested and charged with conspiracy to commit money laundering, after being surveilled acting suspiciously while carrying a rolling suitcase in lower Manhattan.  (PSR ¶¶ 41-42).  Law enforcement approached Mr. Diaz in front of a building at 373 Canal Street.  Ultimately, they obtained his consent to search his apartment in that building, where they recovered, among other things, approximately $2 million in cash, a loaded firearm, drug paraphernalia, drug ledgers, and a radio frequency ("RF") detector.  (*Id.* at ¶¶ 43-44).  Mr. Diaz was ultimately convicted after a guilty plea and sentenced principally to a term of 87 months' imprisonment.  (*See generally United States* v. *Diaz*, No. 02 Cr. 764 (SAS) (S.D.N.Y.)).

Mr. Diaz was released from custody one year early, in October 2007, after his successful completion of the Residential Drug Abuse Program, and was successfully discharged from his term of supervised release in October 2010.  (PSR ¶¶ 40, 46).  According to Mr. Diaz, however, he relapsed into marijuana use a few months later, in January 2011.  (*Id.* at ¶ 76).  According to the charging instrument in the instant case, Mr. Diaz's participation in the charged conspiracy also began in 2011.  (Dkt. #14).

On August 21, 2014, Mr. Diaz waived indictment, consented to the filing of a superseding information charging him with conspiracy to distribute and to possess with the intent to distribute cocaine, and pleaded guilty to the information. (Dkt. #14-16). The plea was entered pursuant to a written plea agreement with the Government in which the parties stipulated that the applicable range under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") was 151 to 188 months' imprisonment, with a mandatory minimum term of 120 months. (PSR ¶ 4).[1]

Sentencing in the matter took place on December 3, 2014. (*See* Dkt. #21 (sentencing transcript ("Sent. Tr.")); Dkt. #20 (judgment)). During the proceeding, the parties disputed the *bona fides* of Mr. Diaz's claims of drug dependency. (*See, e.g.,* Sent. Tr. 10-11, 13-16). The Court sentenced Mr. Diaz principally to a term of 121 months' imprisonment, the bottom of the applicable Guidelines range; in so doing, the Court balanced Mr. Diaz's support network of family and friends and his attempts at legitimate employment with the seriousness of the offense conduct and of Mr. Diaz's criminal history. (*Id.* at 26-27). The written judgment of conviction was entered the following day, on December 4, 2014. (Dkt. #20).

Mr. Diaz filed a *pro se* motion for compassionate release that this Court docketed on March 5, 2021. (Dkt. #23). The Court appointed Mr. Diaz's prior counsel pursuant to the Criminal Justice Act to file a supplemental

---

[1]     Between Mr. Diaz's plea and his sentencing, the United States Sentencing Commission revised the Guidelines, such that the parties agreed at sentencing that the applicable range was 121 to 151 months' imprisonment. (*See* Dkt. #19 at 2 n.1).

memorandum in support of Mr. Diaz's motion, which memorandum was filed

on June 21, 2021.  (Dkt. #29).  In brief, the defense argued that Mr. Diaz

should be released from custody because (i) he had contracted the COVID-19

virus while housed at FCI Fort Dix, and, despite being vaccinated, could

contract it again; (ii) his age and the congregate nature of his detention

increased the risk of reinfection; (iii) he had served a significant portion of his

sentence; (iv) his behavior in prison has been exemplary; and (v) he has crafted

a plan of reentry.  (*Id.*).  The Government opposed Mr. Diaz's request by letter

brief dated July 9, 2021.  (Dkt. #30).  Mr. Diaz then filed a counseled reply

submission on July 19, 2021.  (Dkt. #31).

At the time that Mr. Diaz filed his *pro se* opening submission, he was

housed at FCI Fort Dix in Fort Dix, New Jersey.  By the time counsel filed his

supplemental submission, Mr. Diaz had been transferred to the Metropolitan

Detention Center ("MDC") in Brooklyn, New York.  After briefing on this motion

concluded, Mr. Diaz was transferred to a halfway house administered by RRM

New York.  The Court understands from BOP personnel that Mr. Diaz currently

shares a room with one roommate in a facility that houses approximately 115

other inmates; that he has access to local doctors and hospitals; and that he

has the ability to apply for programming and "reentry passes."

## APPLICABLE LAW

Under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act,

Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), a court may reduce a

defendant's sentence upon motion of the Director of the BOP, or upon motion

of the defendant.  A defendant may move under § 3582(c)(1)(A) only after the

defendant has "fully exhausted all administrative rights to appeal a failure of

the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse

of 30 days from the receipt of such a request by the warden of the defendant's

facility, whichever is earlier."  *Id.*

When considering an application under § 3582(c)(1)(A), a court may

reduce a defendant's sentence only if it finds that "extraordinary and

compelling reasons warrant such a reduction," and that "such a reduction is

consistent with the applicable policy statements issued by the Sentencing

Commission."  18 U.S.C. § 3582(c)(1)(A)(i); *see generally United States* v.

*Kimbell,* No. 21-288, 2021 WL 5441249, at *1 (2d Cir. Nov. 22, 2021).  "The

defendant has the burden to show he is entitled to a sentence reduction."

*United States* v. *Ebbers,* No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4

(S.D.N.Y. Jan. 8, 2020) (citing *United States* v. *Butler,* 970 F.2d 1017, 1026 (2d

Cir. 1992)).

The Second Circuit has very recently summarized the standards

pursuant to which district courts must evaluate compassionate release

applications:

> Section 3582(c)(1)(A) authorizes a court to reduce a
> previously imposed term of imprisonment upon finding
> that "extraordinary and compelling reasons warrant
> such a reduction."  18 U.S.C. § 3582(c)(1)(A)(i).  A court
> deciding a compassionate release motion can consider
> "the full slate of extraordinary and compelling reasons
> that an imprisoned person might bring before [it]."
> *United States* v. *Brooker,* 976 F.3d 228, 237 (2d Cir.
> 2020).  But there are three requirements that must be

satisfied before a court can grant such relief.  First, absent waiver or forfeiture by the government, an inmate must exhaust administrative remedies by requesting such relief from prison authorities. Specifically, an inmate may ask the sentencing court to consider reducing a sentence only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."   18 U.S.C. § 3582(c)(1)(A); *see also United States* v. *Saladino*, 7 F.4th 120, 124 (2d Cir. 2021) (holding that the government may waive or forfeit the exhaustion requirement).  Second, a court must "consider[ ] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable."  18 U.S.C. § 3582(c)(1)(A); see [*United States* v. *Jones*, 17 F.4th 371, 374-75 (2d Cir. 2021)].  Section 3553(a), in turn, lists numerous factors a court must review when imposing a sentence.  These include, as most relevant here, "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed ... to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "the need for the sentence imposed ... to provide the defendant with ... correctional treatment in the most effective manner"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a).  Third, the inmate must demonstrate that his proffered circumstances are indeed "extraordinary and compelling" such that, in light of these § 3553(a) factors, a sentence reduction is justified under § 3582(c)(1)(A) and would not simply constitute second-guessing of the sentence previously imposed.

*United States* v. *Keitt*, No. 21-13-cr, 2021 WL 6058144, at *2 (2d Cir. Dec. 22, 2021).

## DISCUSSION

The parties are in agreement that the exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A) has been satisfied.  (*Compare* Dkt. #23 at 11 (recounting denial of request), *with* Dkt. #30 at 4 n.3 ("Although the Government has not yet been able to obtain independent proof of [Mr. Diaz's] submission, for the purposes of responding to the Motion, the Government does not contest that Diaz has satisfied the statutory exhaustion requirement contained in Section 3582.")).  The Court thus proceeds to consider whether Mr. Diaz has identified "extraordinary and compelling reasons" warranting his release, and concludes that he has not.

As outlined above, Mr. Diaz does not focus on a single factor, but rather claims that "a confluence of factors establish extraordinary and compelling reasons to release Mr. Diaz from the remainder of his 121-month term of imprisonment, and demonstrate early release would not undermine the purposes to be served by the § 3553(a) factors." (Dkt. #29 at 11-12).  Several of Mr. Diaz's proffered bases for release concern his confinement during the COVID-19 pandemic, including the public health challenges of congregate housing at FCI Fort Dix; the fact that he contracted the COVID-19 virus; and the risks of reinfection to him, particularly given his age. (Dkt. #29 at 12-18).

Courts in this District have granted, and denied, compassionate release motions based on the existence of the COVID-19 pandemic and the risks of its transmission at prisons.  *See, e.g., United States* v. *Morrison*, No. 16 Cr. 551-1 (KPF), 2020 WL 2555332, at *2 (S.D.N.Y. May 20, 2020); *see also United States*

v. *Bush*, No. 17 Cr. 611-4 (AT), 2021 WL 3097417, at *2 (S.D.N.Y. July 21, 2021) ("Courts have granted modified sentences in light of COVID-19 for inmates with illnesses or injuries that make them particularly vulnerable to COVID-19.  By contrast, in cases where an inmate does not suffer such illnesses or injuries, courts in this district have denied requests for compassionate release." (internal citations omitted)).  However, in situations in which the inmate has already contracted the virus, the argument for release to prevent infection is necessarily weakened.  *See United States* v. *Negron*, No. 11 Cr. 324-1 (CS), 2021 WL 3540240, at *1 (S.D.N.Y. Aug. 10, 2021) ("First, he has already had COVID-19 and, despite his risk factors, fortunately did not suffer a severe case.  Now that he has been diagnosed with the disease and weathered it, a sentence reduction based on the risk of contracting it no longer makes sense."); *United States* v. *Batista*, No. 19 Cr. 2 (JFK), 2021 WL 1895030, at *1 (S.D.N.Y. May 11, 2021) ("Second, Batista represents that he has already contracted the virus.  Accordingly, 'the fundamental and overriding purpose of [Batista's] request for immediate release — i.e., the desire to remove him from an environment where he may contract the virus — is significantly less compelling than when the [June 16, 2020 d]ecision concluded that his immediate release was not warranted." (citation omitted)); *United States* v. *Mateus*, No. 14 Cr. 504 (KPF), 2020 WL 5096062, at *4 (S.D.N.Y. Aug. 28, 2020) ("Put simply, Mr. Mateus has already contracted the COVID-19 virus and recovered from it.  Other courts have denied compassionate release requests on this basis, and the Court is persuaded by their analyses."); *United States* v.

*Rodriguez*, No. 19 Cr. 64 (VLB), 2020 WL 4581741, at *2 (D. Conn. Aug. 10, 2020) ("A number of district courts in the Second Circuit have found an inmate's positive test undermines his case for compassionate release on the basis of his susceptibility to COVID-19 because the main point of releasing an individual is to decrease the person's chance of contracting COVID-19.").

Mr. Diaz rejoins that he is at an increased risk for reinfection, citing his age and the conditions at FCI Fort Dix. Since his submission, however, Mr. Diaz has been moved to a halfway house, where his housing situation is considerably different. The entire facility houses fewer than 120 inmates; Mr. Diaz has only a single roommate; and the location of the facility gives Mr. Diaz expanded access to medical treatment. Relatedly, the fact of Mr. Diaz's vaccination also counsels against a finding of extraordinary and compelling circumstances. *See United States* v. *Bailey*, No. 97 Cr. 269 (DLC), 2021 WL 4942954, at *2 (S.D.N.Y. Oct. 22, 2021) ("While the intersection of the COVID-19 pandemic and underlying health conditions can serve as an extraordinary and compelling circumstance justifying compassionate release, Bailey is fully vaccinated against COVID-19 and his medical records indicate that his chronic health conditions are well-controlled. Bailey's risk of continued incarceration given the COVID-19 pandemic does not qualify as an extraordinary and compelling circumstance.); *United States* v. *Kosic*, No. 18 Cr. 30 (PAC), 2021 WL 1026498, at *2 (S.D.N.Y. Mar. 17, 2021) ("courts in this [C]ircuit have found that vaccination mitigates the risk an inmate faces from COVID-19 to the point that his health conditions weighing in favor of release are no longer

extraordinary and compelling" (collecting cases)); *see generally United States* v. *Jones*, No. 17 Cr. 214 (CM), 2021 WL 4120622, at \*2 (S.D.N.Y. Sept. 9, 2021) (same).

Mr. Diaz also notes his exemplary disciplinary record, as well as his work and educational experiences while incarcerated.  (Dkt. #29 at 19).  While the Court commends Mr. Diaz for these efforts, rehabilitation alone is insufficient to merit compassionate release, and the Court specifically finds it insufficient in light of the nature and circumstances of Mr. Diaz's crime.  *Cf. Brooker*, 976 F.3d at 238 ("The only statutory limit on what a court may consider to be extraordinary and compelling is that rehabilitation alone shall not be considered an extraordinary and compelling reason." (citation and quotation omitted)); *see also United States* v. *Nwankwo*, No. 12 Cr. 31 (VM), 2020 WL 7335287, at \*3 (S.D.N.Y. Dec. 14, 2020) (concluding that "[Defendant's] rehabilitative efforts [were] certainly commendable, but they do not, either alone or in combination with the other circumstances he cites, meet the extraordinary and compelling standard" (internal marks omitted)).

Understandably, the defense is not asking the Court to consider these factors individually, but in tandem, with a holistic focus on the conditions of Mr. Diaz's confinement, the risks to his health, and the progress that he has made while detained.  It is true that neither the Court nor the parties could have foreseen the pandemic, or its attendant changes to the conditions of Mr. Diaz's confinement, when he was originally sentenced in December 2014.  That said, Mr. Diaz is now in a halfway house with less restrictive, as well as safer,

living conditions. What is more, the programming of the halfway house is specifically geared to assist residents like Mr. Diaz with access to employment, training, and medical and mental health care. *See* https://www.bop.gov/about/facilities/residential_reentry_management_centers.jsp (last accessed January 3, 2022). Given the inchoate nature of Mr. Diaz's plans for reentry (*see, e.g.*, Dkt. #29 at 6-7), and the Court's concerns regarding recidivism, the Court believes that Mr. Diaz would benefit from the structure and programs offered through the halfway house.

Separately, the factors set forth in 18 U.S.C. § 3553(a) counsel against granting Mr. Diaz's motion. Those factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need "to protect the public from further crimes of the defendant." *See* 18 U.S.C. § 3553(a)(1), (a)(2)(C). As discussed above, Mr. Diaz received a substantial sentence for money laundering in 2002, but almost immediately embarked on an even larger-scale cocaine importation conspiracy once his term of supervised release ended. Mr. Diaz's current plan of reentry is too amorphous to ameliorate the Court's concerns regarding further criminal conduct. Accordingly, even if the Court had found extraordinary and compelling circumstances on the facts presented, which it has not, it would deny Mr. Diaz's application based on its consideration of the § 3553(a) factors.[2]

---

[2]    To the extent that he has not otherwise done so, Mr. Diaz can pursue relief in the form of a furlough under 18 U.S.C. § 3622 or home confinement as contemplated in the CARES Act, Pub. L. No. 116-136 (2020), and the Attorney General's April 3, 2020 memorandum to the BOP. The decision to grant any such relief, however, is reserved to the discretion of the BOP.

11

## CONCLUSION

For the foregoing reasons, Defendant Anthony Diaz's motion for

compassionate release under 18 U.S.C. § 3582(c)(1)(A) is DENIED.  The Clerk of

Court is directed to terminate the motion at docket entry 23.

SO ORDERED.

Dated:   January 3, 2022
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge